FILED

09/10/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2019

## STATE OF TENNESSEE v. MAKOYOUS HOUSTON

**Appeal from the Criminal Court for Knox County**
**No. 106372   G. Scott Green, Judge**

_____

**No. E2018-01118-CCA-R3-CD**

_____

The Appellant, Makoyous Houston, appeals the trial court's revocation of his probation, contending that the proof adduced at the hearing was insufficient to support the revocation and that the trial court abused its discretion by ordering him to serve his sentence in confinement.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Mark E. Stephens and Jonathan Harwell (on appeal), and Chloe Akers (at trial), Knoxville, Tennessee, for the Appellant, Makoyous Houston.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Deborah Malone, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Factual Background**

On September 16, 2015, the Appellant was indicted on charges of especially aggravated kidnapping, aggravated assault, and domestic assault.  Pursuant to a plea agreement, the Appellant pled guilty to aggravated assault and agreed to be sentenced as a Range II offender to ten years.  The plea agreement further provided that the Appellant could apply for probation.  The remaining charges were dismissed.  The trial court ultimately sentenced the Appellant to serve one year in confinement and the remaining nine years on supervised probation.

On March 27, 2018, a probation violation warrant was issued alleging that the Appellant failed to report for an intake appointment on February 13, 2018; that he reported on February 20, 2018; but that he failed to report again in February or March. The warrant further alleged that the Appellant's whereabouts were unknown and that he had failed to pay any of the required fees and costs. On April 5, 2018, the probation violation warrant was amended to allege that the Appellant had been charged with simple possession and casual exchange of marijuana on March 29, 2018, and that he had failed to report the charges to his probation officer.

At the probation revocation hearing, Officer Hunter Snodderly testified that he had been employed by the Knoxville Police Department for four years and that he had been trained in the detection and identification of narcotics, including how to distinguish the smell of burned marijuana from the smell of raw marijuana.

Officer Snodderly said that on March 15, 2018, he initiated a traffic stop of a BMW that had a brake light out. The Appellant was driving the vehicle, and his small child was a passenger. Because Officer Snodderly detected the smell of raw marijuana coming from the vehicle, he asked the Appellant if any marijuana was in the vehicle, and the Appellant responded that "he had thrown it out before [Officer Snodderly] stopped him." The Appellant stepped out of the vehicle at Officer Snodderly's request, and Officer Snodderly searched the vehicle. In the center console, he found a small plastic baggie containing a green leafy substance he believed to be marijuana.

On cross-examination, Officer Snodderly acknowledged that he did not find any drug paraphernalia, money, or other drugs in the vehicle. Officer Snodderly issued the Appellant a citation for possession of marijuana.

Jacob White, a probation officer with the Tennessee Board of Probation and Parole, testified that the Appellant was supposed to report for the first time on February 13, 2018. The Appellant did not report on that date. Although White did not call the Appellant to tell him to report on February 20, he was "sure someone did." The Appellant reported to probation on February 20, but he did not report to probation again.

On March 27, a probation violation warrant was issued alleging that the Appellant had failed to report to the probation office. On April 5, White filed an amendment to the warrant upon discovering that the Appellant had been cited for simple possession of marijuana. The Appellant never informed White of the citation.

On cross-examination, White said that he did not recall whether he was working on February 13. However, after the Appellant failed to report, White received an email from the "intake team" informing him that the Appellant had failed to report on February

13, but he did not keep a copy of the email. White did not know how the Appellant was notified that he was to report on February 20. He explained that the normal procedure was that when someone failed to report, the intake team contacted the person to find out why they failed to report, warned them of the consequences of the failure to report, and rescheduled the appointment to the next date, which would explain why the Appellant came in on February 20.

White stated that as part of the intake procedure, a probationer was subject to a drug screen. White did not recall whether the Appellant's drug screen was negative but acknowledged that he would have been informed of a positive test.

White stated that the Appellant's original probation officer was Paula Bothof, but White did not know if she was at the probation office on February 20. White explained that Bothof was transferred at the first of March, and White became the Appellant's probation officer. White acknowledged that he did not make any attempts to contact the Appellant. White said that the Appellant would have been informed of the change in probation officers if he had reported for his appointment.

White thought that after February 20, the Appellant's next appointment would have been sometime during the first week of March. White said that even if the Appellant did not know his probation officer had changed, the Appellant could have contacted Bothof because she still worked for the probation department.

On redirect examination, White stated that the Appellant was on enhanced probation and was required to report twice a month. The requirement would have been explained to the Appellant when he reported on February 20.

The Appellant testified that he was released from custody on February 2, 2018, and that he was given an initial reporting date of February 13, 2018. The Appellant said that he arrived at the probation office early on February 13 and "signed in." Nine or ten people were in the lobby at the time. After waiting a couple of hours without his name being called, the Appellant asked the desk clerk for help. The desk clerk asked for the name of the Appellant's probation officer, and he responded that he had not been assigned a probation officer. The desk clerk gave him a card reflecting that he was to report on February 20.

The Appellant said that when he reported on February 20, he spent the entire day at the probation office. He had a drug screen, had his photograph taken, obtained an identification card, and had a mental evaluation. He spoke with one probation officer, who asked if the Appellant knew the name of his probation officer. The Appellant responded that he "had a card at the time in my folder saying Jacob White." Before the Appellant left, he handed his probation folder to probation officer Nathan Taylor. The

Appellant told Taylor that he had not been given a return date. Taylor explained that White was out of the office and said that he would leave White a message with the Appellant's contact information. Taylor told the Appellant that if White failed to contact him in three weeks, the Appellant should call Taylor.

The Appellant said that he thought he was supposed to report four times a month while he was on enhanced probation. The Appellant said that his drug screen was negative. He acknowledged that he was cited for possession of marijuana on March 15 and that he did not report the citation to his probation officer. When he reported to court on the marijuana charge on March 29, he was arrested for the probation violation and "didn't make it into the courtroom." The Appellant explained that during his last sentencing hearing, the trial judge essentially said "not to let him down"; therefore, the Appellant did not want to report a citation for simple possession of marijuana the first time he reported to his probation officer. The Appellant said, "I planned on coming with a straight foot forward instead of how everything played out."

The Appellant said that the marijuana did not belong to him, that he did not know it was in the car, and that the car belonged to his girlfriend, Angelia Whitcomb. The Appellant said that he had not smoked marijuana in more than two years.

On cross-examination, the Appellant denied that the car smelled like marijuana.

Upon questioning by the trial court, the Appellant said that he had been working at Ruth's Chris restaurant and that he had been allowed to return after he was released. The Appellant acknowledged that he "dropped the ball" but said he was willing to comply with the terms of probation.

The trial court stated that it wanted to hear from the Appellant's girlfriend, who had been sworn in with the witnesses who were expected to testify. Defense counsel stated that she had not planned to call her to testify. The trial court stated, "Well, then I'll call her." Angelia Whitcomb testified that she had dated the Appellant for nearly four years and that he was driving her 2001 BMW X5 on March 15. Whitcomb stated that the marijuana found in the vehicle belonged to her and that the Appellant did not know anything about it.

The trial court asked the parties if the probation office kept logs that reflected who signed in each day. The State responded affirmatively. The trial court told the State to produce the logs and cautioned the Appellant, "If those logs are produced and they don't show your name on one or both of those dates, you're going to the penitentiary. If they do, I'll decide what the appropriate sanction is."

At a subsequent hearing, the State presented the sign-in logs maintained by the probation office. The records did not show that the Appellant signed in on February 13; however, he did sign in on February 20. The prosecutor stated, "I also spoke with the intake officer and reviewed notes in our system and she does not have him on February 13th."

The court stated that the Appellant had been given an "advantageous resolution" and a chance to serve his sentence on probation. The court accredited the officer's testimony that he smelled raw marijuana in the car and discredited the Appellant's testimony that he did not smell marijuana. The court also found that the probation office logs reflected that the Appellant had been untruthful with the court about reporting on February 13. The trial court revoked the Appellant's probation and ordered him to serve his original sentence in confinement. On appeal, the Appellant challenges the trial court's ruling.

## II. Analysis

Upon finding by a preponderance of the evidence that the Appellant has violated the terms of his probation, a trial court is authorized to order the Appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

On appeal, the Appellant complains that the trial court failed to specifically find how the Appellant knew to report on February 20 if he had failed to report on February 13. Additionally, he contends that the State failed to adduce proof to corroborate Officer Snodderly's testimony that marijuana was found in the car and failed to prove that the Appellant had constructive possession of the marijuana. Finally, the Appellant asserts that even if the revocation were proper, the trial court abused its discretion by ordering the Appellant to serve his sentence in confinement because of a mere confusion about his reporting date.

The trial court need only find by a preponderance of the evidence that the Appellant violated the terms of his probation. Tenn. Code Ann. § 40-35-311(e). The trial court found that the Appellant failed to report to the probation office as directed on February 13. Moreover, the Appellant admitted he did not report that he had been charged with possession of marijuana. The record does not preponderate against the

findings of the trial court. Upon finding that the Appellant violated the terms of his probation, it was within the trial court's authority to order the Appellant to serve his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Moreover, "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362- CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002).

### III. Conclusion

The judgment of the trial court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE